# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAVIN E. ALLEN, | CV F 05-0005 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| PAUL M. SCHULTZ, | [Doc. 1] |
| Respondents. | |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]

BACKGROUND[2]

On September 20, 1999, Petitioner was sentenced to 181 months imprisonment and 4 years of supervised release after being convicted of three counts of possessing cocaine with the intent to distribute and one count of carrying a firearm during and in relation to a drug trafficking crime. 21 U.S.C. § 841(a)(1); 18 U.S.C. § 924. (Declaration of Amy Standefer, Exhibit D.) The court ordered Petitioner to pay a penalty assessment of $400.00 and to participate in the Inmate Financial Responsibility Program ("IFRP"). Id.

Petitioner arrived at FCI Terminal Island on November 15, 1999, and began his participation in

---

[1] On June 7, 2006, this action was reassigned to Judge Anthony W. Ishii for all further proceedings due to the senior status of Judge Robert E. Coyle. (Court Doc. 15.)

[2] This information is derived from Respondent's answer to the instant petition, as it correctly sets forth the factual background in this case.

1  the IFRP on November 21, 1999. (Standefer Declaration, Exhibit G.) Between March 13, 2000, and
2  September 15, 2004, Petitioner made a total of 14 payments totaling $351.00 toward his court-
3  ordered assessment. (Id., Exhibit H.)

4    On January 5, 2003, staff at Terminal Island observed Petitioner fighting with an unidentified
5  male in the lobby area of the C Housing Unit. (Id., Exhibit L.) Allen continued hitting the other inmate
6  with a closed fist despite repeated direct orders to stop fighting. (Id.) Staff also witnessed other
7  inmates striking Petitioner as well. (Id.) On January 9, 2003, Petitioner was issued an incident report
8  for fighting with another person, a Code 201 violation. (Id.; 28 C.F.R. § 541.13.)[3] Petitioner told
9  prison officials that he was defending himself. (Id.) On January 14, 2003, the Unit Discipline
10 Committee ("UDC"), conducted a hearing[4] wherein it was determined that the nature of the charge
11 should be referred to the Discipline Hearing Officer. ("DHO").

12   On January 27, 2003, the DHO started to conduct a hearing on the case. (Standefer
13 Declaration, Exhibit M.) The DHO realized that it had overlooked the fact that Petitioner had
14 requested a staff representative and Petitioner was therefore given the option of waiving his right to a
15 staff representative or having the hearing on another day. (Id.) Petitioner chose to have a new hearing
16 but also submitted a written statement on his own behalf. (Id.)

17   On February 27, 2003, the DHO held the new hearing and Petitioner waived his appearance
18 and therefore was not present at the hearing. (Standefer Declaration, Exhibits M & N.) Although
19 Petitioner's staff representative was present, Petitioner did not come out of his cell, stating that the
20 DHO had already made up her mind. (Id.) Petitioner submitted a written statement arguing that he
21 was acting in self-defense and that he could not be sanctioned for fighting when the person with whom
22 he was fighting could not be identified. (Id.) The DHO found that Petitioner had committed the assault
23 as charged. (Id.) The DHO sanctioned Petitioner by disallowing 27 days of good-conduct time and
24 giving him 30 days of disciplinary segregation.
25 A disciplinary transfer to another institution was also recommended. (Id., Exhibit M.)

---

[3] On January 6, 2003, there was an inmate disturbance between the Black and Hispanic inmates.

[4] The UDC hearing was also delayed due to the institution disturbance on January 6, 2003, as normal operations were delayed for approximately one week. (Id., Exhibit M.)

On March 3, 2003, Petitioner was transferred to USP Atwater. (Id., Exhibit F.) Petitioner was placed in the Special Housing Unit ("SHU"), until he was released to the general population at Atwater on July 23, 2003. (Id., Exhibit Q.)[5]

On July 3, 2003, Petitioner appealed the DHO findings regarding his conduct at Terminal Island to the BOP Regional Office. (Id., Exhibit B.) On October 2, 2003, the Regional Director denied Petitioner's appeal, concluding that Petitioner had been afforded all appropriate due process rights and that the sanctions imposed were within BOP policy limits. (Id., Exhibit C.) Petitioner did not appeal the Regional Director's decision to the BOP Central Office. (Standefer Declaration, at 5, ¶ 9; Standefer Declaration, Exhibit A, pages 10-27.)

On March 2, 2004, Petitioner was again placed in the SHU because of his involvement in an assault on staff and subsequent use of force incident. (Declaration of Carroll Cole at 1; Standefer Declaration, Exhibit Q.)[6] During this incident, while Petitioner was being pat searched, he spun around and attempted to strike staff. (Cole Declaration, at 2.) Petitioner was forced to the ground and restraints were applied. (Id.) Petitioner continuously threatened staff members and their families, as he was being escorted to the Health Services and the SHU. (Id.) Petitioner threatened that he was going to "rape their wives and daughter and make them black." (Id.) As a result of this incident, Petitioner received two incident reports on the following day charging him with threatening another with bodily harm, Code 203; refusing to obey an order, Code 307; and assault, Code 224. (Id.; 28 C.F.R. § 541.13.)

On March 9, 2004, the UDC, conducted a hearing and determined that the nature of the charges should be referred to the DHO. (Cole Declaration, Attachment 2.) On March 24, 2004, the DHO conducted a hearing and found that Petitioner had committed three prohibited acts including, attempted assault (Code 224A), insolence (Code 312), and refusing an order (Code 307). (Standefer Declaration, Exhibit O.) Petitioner was sanctioned by disallowing 41 days of good-conduct time, 30

---

[5] Respondent submits that the notations ATW and TRM in the left column of Exhibit Q stand for Atwater and Terminal Island respectively. The notation "Z" at the beginning of the next column means that the prisoner was transferred to the SHU on the date in the fourth column.

[6] Petitioner has been in the SHU since that date. (Standefer Declaration, Exhibit Q.)

days of disciplinary segregation, and he was barred from commissary privileges for 60 days. (Id.) Petitioner did not appeal this decision to the BOP Regional Office. (Id. at 3-5, ¶ 9.)

On December 15, 2004, it was determined that Petitioner did not owe any obligations as part of IFRP. (Id., Exhibit G.)

Petitioner filed the instant petition on January 3, 2005. Respondent filed an answer on April 26, 2005, and Petitioner filed a traverse on July 18, 2005.

## DISCUSSION

### I. Standard of Review

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See e.g., Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). To receive relief under 28 U.S.C. § 2241 a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner. See e.g. Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); Jalili, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment center); Barden, 921 F.2d at 479 (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); Brown, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parole). A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. Id. At the time Petitioner filed the instant petition he was confined at the United States Penitentiary in Atwater, California (USP Atwater), therefore, venue is proper in the Eastern District of California. 28 U.S.C. § 2254(a); 2241(d).

### II. Exhaustion of Administrative Remedies

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any

4

circumstance of imprisonment must first exhaust all administrative remedies. Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983). The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990). Thus, "because exhaustion is not required by statute, it is not jurisdictional." Id. Rather, "[e]xhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or where the administrative proceedings themselves are void." United Farm Workers of America v. Ariz. Agr. Emp. Rel. Bd., 669 F.2d 1249, 1253 (9th Cir. 1982) (citation omitted); see also Fraley v. United States Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993). If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."

If the petitioner did not properly exhaust his administrative remedies, and such remedies are no longer available, he may have procedurally defaulted on his claims. See Francis v. Rison, 894 F.2d 353, 354-55 (9th Cir.1990) (applying procedural default rules to administrative appeals); see generally Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977); Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir.1988). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. See Francis, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); Murray, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to pro se litigants).

Respondent argues that the entire petition should be dismissed because Petitioner failed to exhaust the administrative remedies. Respondent submits that Petitioner did appeal the Terminal Island DHO findings to the Regional Office, which was ultimately considered on the merits and rejected on October 2, 2003. (Standefer Declaration, Exhibit A, at 6-10; Exhibit C.) Petitioner did not appeal this

decision to the Central Office.[7] (Id., Exhibit A, at 11-27.) As Respondent submits, Petitioner did not appeal the Atwater DHO findings to the Regional Office nor is there any indication that he appealed his placement in the SHU. (Id., Exhibit A.) Petitioner did submit his participation in the IFRP first to the Warden who rejected it there because Petitioner had used more than one supplement sheet in submitting it. (Standefer Declaration, Exhibit A, at 15; 28 C.F.R. § 542.14(c)(3)).[8] Petitioner then appealed this decision to the Regional Director who rejected it because it was filed at the wrong level. (Id. at 17; 28 C.F.R. § 542.17.)[9] As Respondent submits, because the Warden rejected Petitioner's grievance on procedural grounds, Petitioner was required to resubmit his request to the Warden in the appropriate format before he could appeal. 28 C.F.R. § 541.13(III). Instead, Petitioner submitted his request to the BOP Central Office which rejected it for the same reason. (Standefer Declaration, Exhibit A, at 23.)

Petitioner has not sought relief using the proper administrative procedures. In his opposition, Petitioner contends that the BOP administrative remedy procedure is inadequate and ineffective to test the legality of the acts or omissions of the BOP and does not protect the rights of the inmates. (Opposition, at 1.) The Court finds that Petitioner has not shown good cause to excuse exhaustion in this case. Nevertheless, because the petition is without merit, the Court will excuse exhaustion.

III.     Claims For Relief

   A.     Placement in SHU

As Respondent submits, to the extent Petitioner is attempting to challenge the conditions of his confinement in the SHU, his claim is not cognizable via § 2241. A habeas corpus petition is the appropriate vehicle for relief when the prisoner is challenging the "legality or duration" of his confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991); Tucker v. Carlson, 925 F.2d 330, 332 (9th Cir. 1991). When a federal prisoner is seeking to challenge the conditions of his confinement,

---

[7] In his opposition, Petitioner contends that he did submit an appeal to the Central Office, however, he never received a response. Despite Petitioner's contention, he submits no evidence to support this assertion.

[8] Respondent submits the notation "ONE" in the status line means that this was the reason for the rejection.

[9] Respondent submits that the notation "INS" in the status line shows that this was the reason for the rejection.

6

he must file a civil action under <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). Petitioner's contention regarding his placement in the SHU, challenge the conditions of his confinement, not the legality or duration. As such, the claim is not cognizable via § 2241, and must be dismissed.

    B.  <u>Confinement in SHU Violation of Petitioner's Constitutional Rights</u>

Petitioner contends that his detention in the SHU violated his Fifth Amendment right to Due Process and Equal Protection.

As Respondent correctly submits, administrative detention is a housing status that simply removes an individual from the general population. <u>See</u> 28 C.F.R. § 541.22 (administrative detention is defined as a "status of confinement of an inmate in a special housing unit in a cell either by self or with other inmates which serves to remove the inmate from the general population.") More specifically, pursuant to 28 C.F.R. § 541.22 placement in administrative detention is as follows:

> (a) The Warden may delegate authority to place an inmate in administrative detention to Lieutenants. Prior to the inmate's placement in administrative detention, the Lieutenant is to review the available information and determine whether the inmate's placement in administrative detention is warranted. The Warden may place an inmate in administrative detention when the inmate is in holdover status (i.e., en route to a designated institution) during transfer, or is a new commitment pending classification. The Warden may also place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution.

Inmates confined in administrative detention receive the same general privileges as inmates housed in the general population. BOP Program Statement 5270.07, Inmate Discipline and Special Housing Units, Chapter 9.[10] Specifically, those privileges include the opportunity to participate in educational programs, library services, social services, counseling, religious guidance, and recreation.

Prison inmates have a liberty interest protected by the due process clause in connection with the placement in administrative segregation only when the placement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995); <u>see</u> <u>also</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003). As Respondent correctly argues, Petitioner's constitutional rights are not being violated by his continued detention in

---

[10] The Program Statement can be reviewed at the BOP website at <u>http://bop.gov/DataSource/execute/dsPolicyLoc.</u>, Chapter 9, at p. 9.

administrative segregation as his placement is based on the fact that he threatened staff members and their families and attempted to assault a lieutenant. (Cole Declaration, at 1, ¶ 5.) Moreover, as stated above, Petitioner receives the same privileges as those of the general population, and Petitioner does not allege otherwise. Accordingly, Petitioner's claim is without merit.

C. Inmate Financial Responsibility Program Violation of Equal Protection and Due Process Rights under the Fifth Amendment

Petitioner challenges the BOP's authority to administer the Inmate Financial Responsibility Program and claims the program violates his due process and equal protection rights.

Respondent argues that Petitioner's claim does not rise to the level of a constitutional violation and, in any event, the claim is moot as Petitioner's financial obligations have expired.

1. Mootness

A case becomes moot if the "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183 (1984). The Federal Court is "without power to decide questions that cannot affect the rights of the litigants before them" North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 406 (1971) *per curiam*, *quoting* Aetna Life Ins. Co. v. Hayworth, 300 U.S. 227, 240-241, 57 S.Ct. 461, 463-464 (1937). To satisfy the Article III case or controversy requirement, a litigant "must have suffered some actual injury that can be redressed by a favorable judicial decision." Iron Arrow, 464 U.S. at 70, 104 S.Ct. at 375; Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38, 96 S.Ct. 1617, 1924 (1976); NAACP, Western Region, 743 F.2d at 1353.

As Respondent correctly submits, Petitioner's participation in the IFRP was being used to help him pay off the $400.00 special assessment that was imposed on him at sentencing. (Standefer Declaration, Exhibits D, G, H.) Petitioner's obligation to pay the assessment terminated five years after his judgment was imposed, i.e. on September 20, 2004. (Id., Exhibits D, E, at 4.) The BOP is therefore no longer attempting to collect money from Petitioner through IFRP and his claim is now moot. Because the claim is moot, the Court will not address the merits.

D. Due Process Violation Disciplinary Hearing

Petitioner contends that his due process rights were violated when the DHO found that he had

committed the prohibited acts of fighting with another inmate at FCI Terminal Island, assault, refusing to obey an order, and being insolent to a staff member at USP Atwater.

Under the Fourteenth Amendment, no state shall deprive any person of life, liberty, or property without due process of law. Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

A prisoner in a prison disciplinary hearing is not entitled to the full array of due process rights that a defendant possesses in a criminal prosecution. Id. at 556. However, a prisoner who is accused of serious rules violations and who may be deprived of his or her good-time credits is entitled to certain minimum procedural protections. Id. at 571-71 n. 9.

The process due in such a prison disciplinary hearing includes: (1) written notification of the charges; (2) at least a brief period of time after the notice to prepare for the hearing; (3) a written statement by the fact-finders as to the evidence relied on and reasons for the disciplinary action; (4) the inmate facing the charges should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Id. at 564, 566, 570. This Court's review is limited to determining whether some evidence supports the prison's disciplinary decision. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445 (1985).

### 1. FCI Terminal Island Hearing

As Respondent submits, with respect to the FCI Terminal Island DHO hearing, Petitioner was afforded all of the Wolff procedural requirements. He was given written notice of the charged misconduct at least 24 hours before the hearing. (Standefer Declaration, Exhibits L, M.) The hearing was conducted by an impartial body, the DHO and, although, Petitioner claims that the DHO had already made up her mind that he committed the prohibited act, there is no evidence to support Petitioner's conclusory assertion. The DHO report reflects that the DHO considered Petitioner's written statement and his claim of self-defendant, but merely found it unpersuasive.

Petitioner was further given the opportunity to present witnesses and documentary evidence. Although Petitioner chose not to attend the hearing, Petitioner advised the DHO that he did not have any witnesses to present and submitted a written statement setting forth his claim of self-defense.

(Standefer Declaration, Exhibit M.) The DHO considered and rejected Petitioner's claim of self-defense because he could have reported his concerns about his safety to staff. (Id.) Petitioner did not present any evidence that he expressed his safety concerns to staff nor did he explain why he continued to fight despite staff's repeated orders to stop. (Id.) Although Petitioner requested a staff representative to be present at the hearing, he had no information to provide. (Id.) At the conclusion, Petitioner was provided a written statement of the evidence relied upon and the reasons for the sanction. (Id.)

Thus, it is unquestionable that there is "some evidence" to support the DHO's finding that Petitioner engaged in the prohibited act of fighting, given the testimony of the prison staff who saw Petitioner fighting. Accordingly, there is no basis to overturn the DHO's decision.

### 2. USP Atwater Hearing

Petitioner contends that his due process rights were violated because the DHO was not impartial, he was not allowed to submit a written statement on his behalf or present exculpatory evidence, and the DHO failed to provide him with a copy of the DHO report within "the (10) day requirement."

Initially, as Respondent correctly points out, there is no constitutional right to receive the DHO report within 10 days. Wolff only requires that a written statement of the evidence relied upon and the rationale for the sanctions be provided to the inmate. Petitioner was provided with copies of both DHO reports on April 2, 2004. (Standefer Declaration, Exhibit O.)

Petitioner contends that he was "on constructive notice that the (DHO) officer is bias against all inmates because of the "BOP" practice and custom mentality that inmates are guilty regardless of the evidence." (Petition, at 18.) Contrary to Petitioner's assertion, the DHO carefully outlined the evidence relied upon in finding that Petitioner committed the prohibited acts, which included staff memorandums, eyewitness accounts, and Petitioner's statement to the DHO. (Standefer Declaration, Exhibit O.) Specifically, the DHO indicated that greater weight was given to the eyewitness accounts of the incident, describing how Petitioner swung at the lieutenant, raised his voice at staff members, threatened staff members and their families, and refused to obey repeated orders to return to his unit or "cuff up." (Id.) In addition, the initial charge of threatening staff was reduced to a less serious

infraction, insolence. (Id.)

Although Petitioner contends that he was prohibited from presenting a video from a surveillance camera, there is no evidence that Petitioner made this request. In fact, when the DHO informed Petitioner of his due process rights, Petitioner stated that he understood his rights and did not have any documentary evidence to present. (Id.)

Accordingly, because staff followed the procedures outlined in 28 C.F.R. § 541.17, and all the Wolff requirements, Petitioner's due process rights were not violated.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court shall enter judgment in favor of Respondent.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 17, 2006**              /s/ Sandra M. Snyder
icido3                                  UNITED STATES MAGISTRATE JUDGE